THE DIOCESE OF NEWARK, THE TRUSTEES OF THE EPISCO-
PAL FUND AND DIOCESAN PROPERTIES OF THE DIOCESE
OF NEWARK, AND THE RIGHT REVEREND GEORGE E.
RATH, PLAINTIFFS-RESPONDENTS, v. WILLIAM F. BURNS,
AND THE RECTOR, WARDENS AND VESTRYMEN OF SAINT
MARK'S CHURCH IN ORANGE, NEW JERSEY, DEFENDANTS-
APPELLANTS.

Argued April 21, 1980—Decided July 24, 1980.

*Bruce D. Shoulson* argued the cause for appellants (*Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan,* attorneys; *Bruce D. Shoulson* and *Robin A. Rolfe,* on the briefs).

*Eugene M. Haring* argued the cause for respondents (*McCarter & English,* attorneys; *Eugene M. Haring* and *Gita F. Rothchild,* on the brief).

*Adrian M. Foley, Jr.,* submitted a brief on behalf of *amicus curiae* The Roman Catholic Diocese of Newark (*Connell, Foley & Geiser,* attorneys; *Robert J. Kelly,* on the brief).

The opinion of the Court was delivered by

SULLIVAN, J.

This case is before us on certification of defendants' appeal pending unheard in the Appellate Division. 82 *N.J.* 268 (1979). The factual background and issues involved are almost identical to those considered in *The Protestant Episcopal Church v. Graves,* 83 *N.J.* 572 (1980), also decided today. Plaintiffs herein are the Diocese of Newark of the Protestant Episcopal Church (Diocese), the Trustees of the Episcopal Fund and Dioce-

san Properties and the Diocesan Bishop. Defendants are St. Mark's Church in Orange, New Jersey, its rector, wardens and vestrymen.

As in *Graves,* the essential facts are not in dispute. St. Mark's Church was originally incorporated in 1827 as "a congregation of Christians of the Protestant Episcopal church." In 1832, St. Mark's reincorporated under the act of February 17, 1829 entitled "An Act to incorporate religious societies worshipping according to the customs and usages of the Protestant Episcopal Church" and, pursuant to the provisions of that act changed its corporate name to "The Rector, Wardens and Vestrymen of St. Mark's Church in Orange, New Jersey." [1] Following the division of New Jersey into two dioceses of the Protestant Episcopal Church, St. Mark's became a part of the Diocese of Newark.

St. Mark's acquired its first piece of property about 1828 and built its church on the site. Thereafter, additions were made to the church building and additional property acquired. St. Mark's now owns approximately three acres of land on which is located the church, rectory, a frame house and parish hall. Financing of the acquisitions and construction was by local funds only. None of the deeds of conveyance to St. Mark's make any reference to a trust in favor of the Diocese or the Protestant Episcopal Church.

Until 1977, St. Mark's, in accordance with Episcopal law, participated fully in Diocesan and Church activities. It sent delegates to the Diocesan Convention and regularly paid its Diocesan assessments and quotas. Following the enactment of the 1877 supplement to the laws regulating the affairs of the Protestant Episcopal Church, *L.* 1877, *c.* 56, now *N.J.S.A.* 16:12–4, St. Mark's, in conformity with the requirements of that statute, generally sought Diocesan consent to the transfer and mortgaging of its real estate.

---

[1] In 1961 the corporate name was changed to read "West Orange" instead of "Orange."

Over the years, St. Mark's had received numerous donations and bequests of funds some of which were delivered to the Trustees of the Diocesan Episcopal Fund for management. It is undisputed that the funds belong to St. Mark's and that of the approximately $192,000 (at cost) presently held by the Trustees, only $3,788.98 thereof is subject to an express reversionary interest in favor of the Protestant Episcopal Church.

In 1977, as a result of the same doctrinal disputes as precipitated the *Graves* litigation,[2] the Wardens and Vestrymen of St. Mark's notified the Diocese that St. Mark's was terminating its affiliation with the Diocese and the Protestant Episcopal Church. Pursuant to resolutions adopted by the vestry and congregation, St. Mark's affiliated itself with the Anglican Catholic Church, a denomination other than the Protestant Episcopal Church, and demanded the return of funds being held by the Diocese for the benefit of St. Mark's. Bishop Rath immediately "inhibited" defendant Rev. Mr. Burns, the Rector of St. Mark's, from performing priestly duties and thereafter deposed him. See *Graves* p. 575. A substitute priest was sent to St. Mark's by the Bishop but was refused admittance and denied permission to officiate at parish services. This suit followed. It sought an injunction against defendants prohibiting them from exercising control over parish property and a declaration that all property of St. Mark's was held in trust for the use and benefit of the Diocese of Newark and the Protestant Episcopal Church.

The case was tried over a period of six days, at the conclusion of which the trial judge ruled in favor of plaintiffs. He held that the individual defendants had no interest in the real or personal property of St. Mark's and "that title to all of said properties is in St. Mark's." The judgment also provided that the Rev. Mr. Burns, having been deposed as a priest of the Protestant Episcopal Church, was not entitled to the office of Rector of St. Mark's and that the other individual defendants,

---

[2] The disputes involved, *inter alia*, ordination of women to the priesthood and changes in the Book of Common Prayer.

having renounced their affiliation with the Diocese and Church, were not entitled to vote or hold office in St. Mark's Church. Defendants were enjoined from exercising any control over parish property and prohibited from interfering with the use of the premises or with the conduct of the affairs of defendant corporation by plaintiffs or such persons designated by plaintiffs.

As noted, defendants' appeal was certified while pending unheard in the Appellate Division. Defendants' argument on appeal is similar to that made by the appellants in *Graves*. Defendants argue that such hierarchical structure as the Protestant Episcopal Church has, extends only to doctrine. In the absence of trust provisions, defendants claim that the authority of the hierarchy does not encompass local church property, which remains in the control of the local congregation. It is contended that the offices of Rector, Wardens and Vestrymen of St. Mark's Church are not vacant and that the Church hierarchy does not have the right to determine the eligibility for such offices. Additionally, they assert that the principle of compulsory deference to the determination of a hierarchical church body in property disputes has never been the law in New Jersey and that this Court should adopt the neutral principles of law approach for resolving church property disputes.

All of these contentions as well as the ancillary points raised by defendants have been considered and disposed of in our opinion in *Graves*. There we approved the hierarchical church approach utilized in *Watson v. Jones*, 13 *Wall.* 679, 20 *L.Ed.* 666 (1872). Applying that approach to this case, plaintiffs are entitled to the relief granted. As the trial judge noted, the title to all property real and personal remains in St. Mark's Church which was and still is incorporated as an affiliated member of the Protestant Episcopal Church. The Rev. Mr. Burns has been deposed as a priest of the Protestant Episcopal Church and is ineligible to serve as rector of St. Mark's. Likewise, the other individual defendants have disaffiliated themselves from the Protestant Episcopal Church and thereby automatically terminated their eligibility to hold office as Wardens and Vestrymen of St. Mark's.

As was noted in *Graves*, the individual defendants are free to disassociate themselves from the Protestant Episcopal Church and join another denomination. No court can interfere with or control such an exercise of conscience. However, they may not take the church property with them. The judgment of the trial court is affirmed for the reasons set forth herein and in our opinion in *Graves*, also decided today.

SCHREIBER, J., dissenting.

I dissent essentially for the same reasons expressed in my dissent in the companion case, *Protestant Episcopal Church v. Graves*, 83 *N.J.* 594 (1980), decided this day. Moreover, to the extent that the majority relies upon statutes enacted after the Act of February 17, 1829, *L.* 1828, p. 71, under which St. Mark's was reincorporated in 1832, such reliance would appear to be misplaced. The reserved power to modify a corporate charter which retroactively affects rights of stockholders *inter se* and with the corporate entity, does not appear to have come into existence until February 14, 1846. *L.* 1846, p. 16, § 6. See *Trustees of Dartmouth College v. Woodward*, 17 *U.S.* (4 Wheat.) 518, 4 *L.Ed.* 629 (1819).

*For affirmance* —Chief Justice WILENTZ and Justices SULLIVAN, CLIFFORD and POLLOCK—4.

*For reversal* —Justices PASHMAN, SCHREIBER and HANDLER—3.